**PENNSYLVANIA DEPARTMENT
OF GENERAL SERVICES,
Petitioner,**

**v.**

**FRATERNAL ORDER OF POLICE,
LODGE # 85, CAPITOL POLICE,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1996.

Decided Oct. 28, 1996.

Nathan C. Pringle, Jr., Deputy Chief Counsel, for Petitioner.

James L. McAneny, for Respondent.

Before DOYLE and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

The Pennsylvania Department of General Services (DGS) appeals from an arbitration award sustaining a grievance, filed by the Fraternal Order of Police, Lodge # 85, Capitol Police, on behalf of Patrolman Joseph M. D'Angelo, protesting the DGS's personnel actions in the civil service appointment of Patrolman Thomas W. Davies to Capitol Police (Sergeant). We affirm.

The Capitol Police Force operates as part of the Bureau of Police and Safety within the DGS. The police force employs individuals classified as patrolman, corporal, sergeant and lieutenant. The Pennsylvania Labor Relations Board has certified the Fraternal Order of Police Lodge No. 85(FOP) as the exclusive bargaining representative for these classifications. These classifications are also within the state civil service classified service governed by the State Civil Service Commission. The FOP and the Commonwealth of Pennsylvania are parties to a collective bargaining agreement which provides that vacancies with respect to certain classifications within the Capitol Police Force shall be filled in accordance with the provisions of Pennsylvania's Civil Service Act.[1] Reproduced Record (R.) at 13a–65a; 70a–74a.

On October 26, 1992, Sergeant Karl Leuschner of the Capitol Police Force, 4th Platoon, Scranton, notified the DGS that he intended to retire from the Capitol Police Force effective April 23, 1993. R. at 75a. On that same date, Patrolman Joseph M. D'Angelo notified the DGS that he wished to be considered for the position of sergeant being vacated by Sergeant Leuschner's retirement located at the Scranton State Office Building. R. at 76a.

The DGS responded to Patrolman D'Angelo's request by letter dated November 4, 1992. R. at 77a. Therein, the DGS informed Patrolman D'Angelo that it had requested a localized examination for sergeant in Scranton and that all Capitol Police Force positions are regulated by the State Civil Service Commission. *Id.* The DGS further informed Patrolman D'Angelo that the Scranton State Office Building would be notified of an examination date and time and that D'Angelo would be permitted to apply for the position and be tested accordingly. *Id.*

The DGS was subsequently barred by the State Civil Service Commission from conducting a localized civil service examination open only to qualified candidates living in Scranton. The Civil Service Commission determined that it was too costly.

On or about March 25, 1993, the DGS posted a "Position Vacancy Announcement" for the position of Capitol Police Officer (Sergeant) to be available on April 24, 1993 at the Scranton State Office Building. R. at 78a. The announcement stated, in pertinent part, as follows:

**QUALIFICATION REQUIREMENTS:**

One year as a Capitol Police Officer Corporal; or three years of police work including one year of supervisory experience. . . .

**ELIGIBILITY REQUIREMENTS:**

To be considered for promotion without examination, applicants must be assigned to the Scranton Civil Service seniority unit;

1. Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.1—741.1005.

must have or have held regular Civil Service status in the next lower class of Capitol Police Officer (Patrolman) as of 4/7/93; have no disciplinary demotions or suspensions within the last 24 months; and submit a completed and notarized Civil Service Application, SCSC–1, and Unqualified Recommendation for Promotion Form, SCSC–5223, to the Bureau of Personnel on or before 4/7/93.

*Id.*

In addition, the "**INSTRUCTIONS TO APPLICANT**" section of the announcement stated that "[f]or all Civil Service positions to be filled without examination, you must be the 'most qualified' candidate in accordance with the attached Selection Criteria." *Id.*

On April 19, 1993, the DGS sent a letter to Patrolman D'Angelo thanking him for applying for the Capitol Police Officer (Sergeant) position and advising him that "[d]ue to organizational priorities, this position is not being filled at this time." R. at 79a.

On April 26, 1993, Patrolman Thomas W. Davies was assigned as acting sergeant at the Scranton State Office Building. On April 27, 1993, Patrolman D'Angelo sent a letter to the DGS outlining the events and the correspondence that had occurred between October 26, 1992 and April 26, 1993. R. at 80a. Therein, Patrolman D'Angelo requested guidance in the matter. *Id.*

On May 26, 1993, the DGS responded to Patrolman D'Angelo's request for guidance by letter stating:

> The Department of General Services remains undecided in its selection for the sergeant position at the Scranton State Office Building. Until such time as a decision is made, the greater need is for an additional officer at the building. Therefore, the sergeant position was downgraded to a Capitol Police Officer 1 (Patrolman) position. In the meantime, Thomas W. Davies has been assigned temporarily as the officer in charge at the Scranton State Office Building.

R. at 81a.

Thereafter, Patrolman D'Angelo requested that the State Civil Service Commission institute an investigation and monitor the filling of the sergeant position at the Scranton State Office Building. On July 22, 1993, the State Civil Service Commission responded to Patrolman D'Angelo's request as follows:

> We have reviewed this matter with the [DGS]. We have been advised that a determination was made to reallocate the vacant Sergeant position to Capitol Police Officer (Patrolman). The position was reallocated in the latter part of April, 1993 and filled on June 14, 1993 from a veterans' preference certification.

R. at 82a.

On November 18, 1993, the DGS requested the following from its Bureau of Personnel:

> As of this date, Thomas Wayne Davies is assigned the duties of Sergeant (Officer–in–Charge) of the Scranton State Office Building. Mr. Davies has functioned in this position since April 27, 1993. This memo is submitted to you requesting appropriate job reclassification of Mr. Davies to a permanent Sergeant position.

R. at 83a.

The documentation accompanying the DGS's November 18, 1993 request to reclassify Mr. Davies included the Bureau of Personnel's "technical analysis" which concluded that the position be reclassified and the incumbent, Mr. Davies, be promoted accordingly. R. at 85a. The DGS's reclassification request was approved on November 29, 1993, effective November 22, 1993. R. at 84a.

On January 11, 1994, a grievance was filed on behalf of Patrolman D'Angelo complaining that:

> Before the retirement of Sgt. Leuschner, I was the NCOIC in his absence at all times. This was due to Seniority, Supervisory Experience and my Top Test Score on the State Civil Service Test for Promotion (101) Expiration date Nov. 1994.
>
> Then on Dec. 16, 1993 Thr. Patrolman Davies informed me verbally that a Donna Lizotte of the General Service Personnel Dept. informed him that he was promoted to Sgt. effective Dec. 13, 1993 Mon. The Position was not posted and Davies was the Patrolman with the lowest score and

had no Supervisory experience in Police work.

R. at 68a.

A hearing regarding the grievance was held before an arbitrator on November 17, 1995. The arbitrator was presented with the question of whether the DGS's personnel actions in the civil service appointment of Patrolman Davies to Capitol Police (Sergeant) violated the collective bargaining agreement or the rules of the State Civil Service Commission and, if so, what shall the remedy be.

After reviewing the evidence presented, the pertinent provisions of the collective bargaining agreement and the rules of the State Civil Service Commission, the arbitrator concluded that: (1) the DGS's personnel actions violated Article 30, Section 5 of the collective bargaining agreement by not filling the position in accordance with the provisions of the Civil Service Act;[2] and (2) the DGS violated the collective bargaining agreement by not exercising sound discretion in the exercise of its management rights pursuant to Article 2, Section 1.[3]

Accordingly, the arbitrator sustained the grievance and directed the DGS, within

---

2. Article 30, section 5 of the collective bargaining agreement provides that vacancies in the Capitol Police Officer II, Capitol Police Officer III and Police Officer IV classifications shall be filled in accordance with the provisions of the Pennsylvania Civil Service Act. R. at 71a.

3. Article 2, Section 1 of the collective bargaining agreement provides as follows:

   *Section 1.* Except as modified by this Agreement, it is understood and agreed that the Employer, at its sound discretion, possesses the right, in accordance with applicable laws, to manage all operations including the direction of the working force and the right to plan, direct, and control the operation of all equipment and other property of the Employer.

   Matters of inherent managerial policy are reserved exclusively to the Employer. These include but shall not be limited to such areas of discretion or policy as the functions and programs of the Employer, standards of service, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel.

   R. at 15a.

4. "Rule of three" is defined by the rules of the State Civil Service Commission as follows:

---

thirty days of the award, to deem the position of sergeant at the Scranton outpost vacant. The arbitrator further directed the DGS, within that time period, to begin a competitive civil service process for filling that vacancy. The arbitrator directed that the eligibility of candidates to compete for the sergeant position shall be based on the qualifications possessed by them on the thirty-first working day following Patrolman Davies' April 1993 assignment as officer-in-charge at the Scranton location. In addition, the arbitrator directed that Patrolman D'Angelo, if found to be among the three highest rated eligible candidates for promotion to sergeant, shall not be denied appointment by operation of the rule of three as provided for in section 97.12 of the rules of the State Civil Service Commission, absent a showing of good cause.[4] This appeal followed.[5]

This court's scope of review is limited to reviewing the arbitrator's award under the narrow certiorari test. *Pennsylvania State Police v. State Troopers' Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995). This narrow certiorari scope of review limits this court to consider questions regarding:

The requirement that the appointing authority is required to choose from among the three highest-ranking available eligibles in filling a particular vacancy and is therefore entitled to have three eligibles from which to choose. This rule does not prohibit an appointing authority from making an appointment if there are fewer than three available eligibles.

4 Pa.Code § 91.3 (R. at 142a).

Section 97.12 of the rules of the State Civil Service Commissions provides, in pertinent part, as follows:

**§ 97.12 Rejection of eligibles—passovers.**

(a) *General.* An eligible whose name is disregarded in the making of an appointment within the rule of three shall be considered as having been passed over. Three passovers from the same appointing authority shall result in that eligible's name being deactivated on the eligible list. Eligibles so deactivated may not be certified back to the same appointing authority unless requested by that appointing authority.

4 Pa.Code § 97.12 (R. at 180a).

5. On February 20, 1996, the DGS filed with this court an application for stay of arbitrator's award pending action on petition for review. By order entered March 21, 1996, this court granted a supersedeas.

(1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; or (4) the deprivation of constitutional rights. *Id.* Further, under the narrow certiorari scope of review, an error of law alone will not warrant the reversal of an arbitration award. *Id.*

■ On appeal herein, the DGS contends that (1) the arbitrator exceeded his jurisdiction by reversing an out of class eligibility decision rendered by the State Civil Service Commission; (2) the arbitrator exceeded his authority by interpreting the rules of the State Civil Service Commission; and (3) the arbitrator exceeded his authority by ordering the DGS to demote the incumbent sergeant without a showing of unsatisfactory work performance.[6]

Initially, the DGS argues that the arbitrator exceeded his jurisdiction by reversing an out of class eligibility decision rendered by the State Civil Service Commission. With regard to this issue, the DGS contends that the arbitrator basically committed two errors.

First, the DGS argues, the arbitrator exceeded his authority and incorrectly concluded, based on a misperception of the facts, that the thirty working day requirement of section 97.63 of the rules of the State Civil Service Commission[7] applied and was violated. The DGS argues that Patrolman Davies worked as a corporal and met the minimum requirements for corporal. The DGS contends that the arbitrator incorrectly assumed that Patrolman Davies was working out of class as a sergeant merely because a sergeant vacated the officer-in-charge position.

In addition, the DGS contends that the arbitrator misconstrued the November 18, 1993 reclassification request as evidence that on April 27, 1993, Patrolman Davies was assigned the duties of sergeant. *See* R. at 83a. In fact, the DGS contends, the November 18, 1993 reclassification request was merely an acknowledgment that Patrolman Davies, in the course of performing the duties of officer-in-charge was performing at a sergeant's level. The DGS argues that this necessitated the request for a reclassification.

Second, the DGS argues, the arbitrator compounded the first error by reversing an eligibility decision of the State Civil Service Commission. The DGS contends that the State Civil Service Commission evaluated Patrolman Davies' eligibility for the sergeant classification and notified the DGS that he was eligible. *See* R. at 88a. The DGS argues that the State Civil Service Commission has exclusive jurisdiction over the enforcement of eligibility requirements for the purposes of section 97.63 of the rules of the State Civil Service Commission.

The DGS contends that the arbitrator erred in his refusal to accept the commission's findings and by overruling its findings. The DGS argues that once the State Civil Service Commission ruled on the status of Patrolman Davies' eligibility, the arbitrator was constrained to render a decision on the collective bargaining agreement consistent with that of the State Civil Service Commission. We disagree.

Article 30, Section 5 of the collective bargaining agreement provides that vacancies in certain Capitol Police Force classifications shall be filled in accordance with the provisions of the Civil Service Act. *See* R. at 71a. Article 30, Section 13 provides that grievances relating to the interpretation, application and implementation of Section 5 of Article 30 shall be filled at the third step. *See* R. at 72a. Pursuant to Article 27, section 2 of

---

6. We note that the FOP contends that the DGS did not raise these issues before the arbitrator; therefore, these issues were not preserved for judicial review. It is clear that the DGS has formulated the issues for review by this court in accordance with our narrow certiorari standard as set forth in *Betancourt.* Accordingly, we will not deem the issues raised herein by the DGS waived.

7. Section 97.63 of the rules of the State Civil Service Commission provides as follows:

§ 97.63. Working out-of-class

An appointing authority may temporarily assign an employe to perform duties and responsibilities of another class. Except in the case of emergency, which shall be limited to 30 work days, the employe so assigned shall meet all of the established requirements for the class to which assigned. An out-of-class assignment does not entitle the incumbent to preferences for the position on a permanent basis.

4 Pa.Code § 97.63 (R. at 190a).

the collective bargaining agreement, an appeal from an unfavorable decision at step three is resolved through arbitration. *See* R. at 52a. Therefore, the arbitrator had jurisdiction to determine whether a vacancy in the Capitol Police Force was filled in accordance with the provisions of the Civil Service Act.[8]

The fact that the State Civil Service Commission approved the reclassification of Patrolman Davies does not nullify the arbitrator's jurisdiction. The parties to the collective bargaining agreement, the Commonwealth and the FOP, clearly intended to give the arbitrator jurisdiction over the issue of whether vacancies in certain classifications in the Capitol Police Force were filled in accordance with the Civil Service Act. Obviously, to determine this issue, the arbitrator must review and interpret the relevant provisions of the Civil Service Act and the rules of the State Civil Service Commission.

With respect to the arbitrator's interpretation of section 97.63 of the rules of the State Civil Service Commission, as stated previously, any error of law committed by the arbitrator in making an award consistent with his jurisdiction is outside the scope of this court's review. Accordingly, we hold that the arbitrator had jurisdiction over the grievance in this matter and, under our narrow scope of review, we our bound to uphold the arbitrator's interpretation of section 97.63 of the rules of the State Civil Service Commission.

Finally, the DGS argues that the arbitrator exceeded his authority by directing the DGS to vacate the position held by Patrolman Davies and fill the vacancy by a competitive civil service process. The DGS contends that section 741.706 of the Civil Service Act, 71 P.S. § 741.706, prohibits compliance with that directive. The DGS argues that compliance would cost Patrolman Davies his status and pay as a sergeant, leaving him with the pay and status of a patrolman. This, the DGS contends, is nothing less than a demotion.

■ As stated by our Supreme Court in *Betancourt*, an arbitrator's powers are limited. "He or she may not mandate that an illegal act be carried out; he or she may only require a public employer to do that which the employer could do voluntarily." *Betancourt*, 540 Pa. at 79, 656 A.2d at 90.

■ We agree with the DGS that, pursuant to section 741.706, an appointing authority may not demote an employee without a showing of unsatisfactory work performance.[9] Moreover, we recognize that this court has previously held that an invalid promotion cannot be corrected by demoting the employee. *See West v. Department of Public Welfare*, 150 Pa.Cmwlth. 59, 614 A.2d 357 (1992), *petition for allowance of appeal denied*, 535 Pa. 627, 629 A.2d 1386 (1993); *Lawrence v. Department of Labor and Industry*, 69 Pa.Cmwlth. 628, 452 A.2d 108 (1982). However, in these cases upon which the DGS relies, the employee was actually demoted and appealed his or her demotion to the State Civil Service Commission. In the present case, a grievance was filed on behalf of Patrolman D'Angelo, the police officer seeking the sergeant position. As with the employees in *West* and *Lawrence*, Patrolman Davies may appeal if he is demoted as a result of the DGS's compliance with the arbitrator's award.[10]

We point out that Patrolman Davies' reclassification and promotion were in clear

---

8. *See Ambridge Area School District v. Ambridge Area Education Association, PSEA/NEA*, 670 A.2d 1207 (Pa.Cmwlth.1996) and *Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association*, 69 Pa.Cmwlth. 208, 450 A.2d 787 (1982) (An incorporation of statutory provisions into an arbitration agreement evidences an intent by the parties to the agreement to permit the arbitrator to decide whether those statutory provisions have been complied with when resolving a grievance).

9. Section 741.706 of the Civil Service Act provides, in pertinent part, that:

> An appointing authority may demote to a vacant position in a lower class any employee in the classified service who does not satisfactorily perform the duties of the position to which he was appointed or promoted and who is able to perform the duties of the lower class.

10. We note that the arbitrator did not direct the DGS to demote Patrolman Davies. Moreover, it is conceivable that the DGS could assign Patrolman Davies to another sergeant position.

violation of the rules of the State Civil Service Commission; therefore, it was a legally invalid reclassification and promotion from the beginning to which the FOP and Patrolman D'Angelo promptly objected.[11] Reversing the award of the arbitrator simply because the DGS contends that it would result in Patrolman Davies' demotion on grounds other than unsatisfactory working conditions would be blatantly unfair and fly in the face of the arbitration process to which both parties agreed.

Accordingly, the award of the arbitrator sustaining the grievance is affirmed.

### ORDER

NOW, this 28th day of October, 1996, the award by Arbitrator Kinard Lang sustaining the grievance filed by the Fraternal Order of Police, Lodge # 85, Capitol Police Force on behalf of Joseph D'Angelo is affirmed.

11. The arbitrator determined that the DGS violated sections 95.3 and 95.7(d)(3) of the rules of the State Civil Service Commission by filling the position with Patrolman Davies. The arbitrator determined that the DGS violated section 95.63 by permitting Patrolman Davies to perform the duties and responsibilities of the sergeant classification without Patrolman Davies meeting the established requirements for the position. The arbitrator found that it was questionable whether Patrolman Davies possessed the minimum requirements for the sergeant's position of three years of police work including one year of supervisory experience.

In addition, the arbitrator determined that the DGS violated section 95.7(3) by requesting a reclassification and promotion of Patrolman Davies without the benefit of a classification audit revealing that the position should be properly classified to a higher level. Section 97.7(d)(3) of the rules of the State Civil Service Commission provides that "[w]hen a classification audit reveals that a position should properly be classified to a higher level, the incumbent of the position will be promoted without examination to the higher level, if the incumbent possesses the established requirements for the higher classification." 4 Pa.Code § 95.7(d)(3) (R.R. at p. 159a).

The arbitrator found that the evidence would convince any reasonable person that the DGS knew, when Patrolman Davies was assigned, that the position should be classified to a higher level.