IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Borough of State College, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 696 C.D. 2022 |
| | : | |
| Borough of State College | : | Argued: September 11, 2023 |
| Police Association | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE McCULLOUGH                    FILED: October 6, 2023

The Borough of State College (Borough) appeals from the May 26, 2022 order of the Court of Common Pleas of Centre County (trial court), which denied the Borough's petition to vacate a grievance arbitration award it had filed against the Borough of State College Police Association (Association). Upon review, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 3, 2020, Officer Joseph Scharf (Grievant) was terminated from the Borough Police Department (Department) after an investigation of three internally generated complaints regarding Grievant's performance. (Reproduced Record (R.R.) at 740a.) The first incident occurred on June 14, 2020, after Grievant drove at a speed of 87 miles-per-hour (mph) in a 25-mph zone and passed a civilian vehicle at a speed 72 mph while in pursuit of a motorist who had been exceeding the speed limit and did not even realize that a police officer had been attempting to catch up to him. *Id.* at 657a-60a. The second incident occurred on June 23, 2020, after

Grievant failed to report a high-speed vehicle pursuit until three days afterwards despite being advised to make a timely report by two different detectives. *Id.* at 832a. The third incident occurred on July 12, 2020, after Grievant, while on patrol on a bicycle, unlawfully and improperly deployed pepper spray into the driver's side window of a motorist's moving vehicle during what should have been a routine traffic stop for a headlight violation. *Id.* at 744a.

The Department's internal affairs policy (Regulation) establishes an internal affairs board, referred to as the Conduct and Procedures Review Board (Review Board), under the authority of the Police Chief.[1] *Id.* at 1144a, 1150a. Three separate internal affairs files were opened for the July 2020 pepper spray incident and the two June 2020 driving incidents. The Review Board investigated the June 23, 2020 pursuit pursuant to Section 2.3.1.05.4 of the Regulation,[2] and concluded that Grievant

---

[1] The Review Board has the power to review incidents, including making findings of fact, and has the power to recommend disciplinary action. (R.R. at 1150a.) The Review Board is composed of four officers of different ranks (fellow Police Union members) and a Division Commander who serves as a non-voting chairperson. *Id.* at 184a-87a, 1150a.

[2] Section 2.3.1.05.4 of the Regulation sets forth that the Review Board shall summarize the evidence reviewed and forward a recommendation of action to the Chief of Police:

> At the conclusion of the conduct review, the Conduct and Procedures Review Board, in writing, shall summarize the evidence, make findings of fact based on the evidence, and forward such to the Chief of Police with a recommendation for action. The involved officer shall be provided a copy of this memorandum. The recommendation should include the following information:
>
> > A. The particular rule or rules alleged to have been violated.
> >
> > B. The dates and the places the alleged acts or omissions occurred.
> >
> > C. A statement of the alleged acts or omissions.

**(Footnote continued on next page…)**

2

violated five Department policies: (1) Unsatisfactory Performance, (2) Department Reports, (3) Completion of Reports, (4) Pursuit Officer Responsibilities, and (5) Submission of Reports. The Review Board reviewed Grievant's use of pepper spray and determined that it was unjustified and in violation of three Department policies: (1) Use of Force, (2) Authorized Use of Force Options and Their Appropriate Application, and (3) Use of Authorized Less Lethal Weapons-Oleoresin Capsicum. The Review Board investigated the June 14, 2020 high speed chase and concluded that Grievant violated two Department policies: (1) Emergency Vehicle Driving, and (2) Unsatisfactory Performance. Based on its findings, the Review Board recommended a five-day suspension and a written reprimand. *Id.* at 224a-25a, 745a-46a, 799a, 833a-35a, 906a-12a. Pursuant to Section 2.3.1.06.3 of the Regulation,[3] the Review Board forwarded its findings and recommendation to the Police Chief.

The Police Chief, John Gardner, reviewed the Review Board's findings, report, and recommendation. As for the June 14, 2020 high-speed chase, in addition to the policies the Review Board found were violated, Chief Gardner concluded that

---

D. The recommended disciplinary or nondisciplinary action which can include a SIL [(specific incident log)] entry, written warning, counseling, training, written reprimand, suspension, demotion, or termination.

[3] Section 2.3.1.06.3 of the Regulation provides that the Chief of Police may then do one of three things:

A. sustain the charge(s) and impose the recommended corrective or disciplinary action. Disciplinary action by the Chief of Police may be up to and including a written reprimand. In disciplinary actions that involve suspension, demotion, or termination, the Chief of Police will make a recommendation to the Borough Manager in writing. The Manager will, after his review, make a decision on the incident;

B. modify the recommended action; or

C. exonerate the charged officer.

3

Grievant **also** violated three additional policies: (1) Department Reports, (2) Completion of Reports, and (3) Submission of Reports. As for the June 23, 2020 pursuit, Chief Gardner concluded that Grievant violated **two additional** policies that the Review Board did not find were violated: (1) Motor Vehicle Pursuit Procedure and (2) Initiation & Continuation of Pursuit. (R.R. at 592a-95a.) Chief Gardner also considered two prior incidents involving Grievant, including a 2018 Performance Improvement Plan and a 2018 Written Warning. *Id.* at 596a-97a. Chief Gardner additionally considered the following history of Grievant's prior corrective actions:

> May 8, 2017 – [Grievant] was issued a corrective SIL documenting a highly unprofessional Interaction with [a Doctor] at Mount Nittany Medical Center. His actions and demeanor toward the Doctor were disrespectful, unprofessional, and unacceptable. In retrospect, this Incident should have resulted in an Internal Affairs Investigation, however it was hoped that corrective action at the patrol level would resolve and rectify the issues.

> December 1, 2018 – [Grievant] was placed on a Performance Improvement Plan (PIP) due to performance challenges focusing on: Criminal Law and Ordinances, Department Policies and Procedures, Field Operations/Tactical & Procedural, Investigative Skills, and Written Communications.

> [Grievant] was issued a SIL dated November 11, 2018, that became the impetus for the (PIP) and addressed [Grievant's] improper search of three (3) males following a lawful traffic stop and his subsequent incomplete written reporting of the Incident, [Grievant] searched the males without consent and without probable cause. Case law and [D]epartment policy were not followed, and these searches were outside those parameters. He also submitted a report that lacked sufficient detail to identify all persons present, the probable cause for the searches, a description and location of evidence in the

4

vehicle and whether any of the occupants were arrested. The (PIP) was in effect from December 1, 2018, through April 30, 2019.

February 27, 2020 – [Grievant] was issued a corrective SIL by Sergeant Foster for leaving a female DUI defendant unattended in the field to engage in a profanity laden argument with the defendant's husband. It was noted that [Grievant's] actions were unnecessary and created a safety risk for himself, fellow officers, and the public.

*Id.* at 1042a-46a.

Chief Gardner recommended to the Borough Manager, Thomas Fountaine, that Grievant's employment with the Department be terminated.[4] Chief Gardner explained his reasoning as follows:

Given the severity of the sustained violations and the continuing pattern of behavior exhibited by [Grievant], I cannot agree with this recommendation. I do not believe the [Review] Board's recommended discipline will prove effective in bringing about the positive change in performance and behavior that is required.

In the three (3) current Internal Affairs incidents, [Grievant] had fifteen (15) policy charges sustained as Improper Conduct. He has two (2) additional sustained policy charges as Improper Conduct from a prior internal investigation. As of this date, [Grievant] will have seventeen (17) total policy charges sustained as Improper Conduct.

* * *

He has been issued several corrective action SILs to address performance issues and was placed on a Performance

---

[4] In cases that involve suspension, demotion, or termination, the Police Chief makes a written recommendation to the Borough Manager, who is the final decision-maker pursuant to Section 2.3.1.06.3(A) of the Regulation. (R.R. at 1152a.)

Improvement Plan (PIP) from December 1, 2018 through April 30, 2019 to address many of the same issues expressed in the current investigations. . . . All previous efforts to address [Grievant's] performance issues in a progressive manner, have failed to elicit the desired or required changes sought.

Based on the aforementioned information, it is my recommendation that [Grievant's] employment with the [] Department be terminated.

*Id.* at 1045a-46a.

Borough Manager Fountaine reviewed Chief Gardner's recommendation and determined that Grievant's use of pepper spray at a moving motorist, standing alone or in combination with the other incidents, warranted his termination of employment. *Id.* at 738a-40a. On December 3, 2021, Borough Manager Fountaine notified Grievant of his termination.

On December 4, 2020, Grievant filed a grievance, pursuant to Article VIII of the parties' collective bargaining agreement (CBA), which began at Step 4 because the matter was one processed by Internal Affairs. *Id.* at 1204a. On December 17, 2020, the Step 4 meeting was held, and the grievance was denied by letter dated December 21, 2020. *Id.* at 1206a. Arbitration was requested on January 14, 2021, and proceeded before an Arbitrator.

The parties stipulated that the issue to be determined by the Arbitrator was whether Grievant was terminated for just cause. *Id.* at 21a. Both parties presented multiple witnesses and the Arbitrator heard testimony over three days. The Borough argued that Grievant's termination was for just cause because his actions were far below the standards set for proper policing. In the Borough's estimation, the pepper spray incident, together with the other offenses which also endangered public safety, warranted dismissal. The Borough argued that Grievant's conduct evidenced a

persistent tendency to act on his own, disregard of police rules and training, proceeding on his own conjecture, and an inflated sense of urgency, regardless of better judgment and public safety. It asserted that termination is the only remedy for his conduct.

The Association argued that the Regulation, setting forth the Department's Internal Affairs policies, once promulgated by the Borough, became part of the CBA process. Citing Section 2.3.1.06.3 of the Regulation, the Association argued that the Borough failed to follow its own internal affairs policy because Chief Gardner considered the totality of everything in making his recommendation for termination. It asserted that, meanwhile, the Review Board had reviewed only the July 2020 pepper spray incident, and the June 14, 2020 and June 23, 2020 driving incidents, in identifying the violations and recommending that Grievant be subjected to a five-day suspension without pay. The Association argued that by finding other violations that had been rejected by the Review Board and "overruling" the conclusions of the Review Board, Chief Gardner violated Section 2.3.1.06.3 of the Borough's Regulation, which allows the Police Chief only to "sustain the charge(s) and impose the recommended corrective or disciplinary action," "modify the recommended action" or "exonerate" the officer. Furthermore, the Association asserted that, contrary to Chief Gardner's rationale for terminating Grievant, SILs cannot be cited as disciplinary history to support a termination. The Association argued that strict adherence to disciplinary rules is an essential part of due process, and when the employer fails in this regard, it violates the due process component of just cause.

The Arbitrator issued her Arbitration Award on November 5, 2021, sustaining the grievance. The Arbitrator concluded that "the addition of [violations] that had not been part of the [Review] Board's deliberation ran counter to the Regulation[]." (Arbitration Award at 20.) She reasoned that "the additional matters

7

Chief Gardner brought up and passed on to Borough Manager Fountaine, with one exception, were not prior discipline and could not have been contested or grieved. As a result, [violations] that had not been adjudicated by the [Review] Board were added to the statement of charges for which [] Grievant was terminated." *Id.* at 18. The Arbitrator found that "for due process to prevail, alleging violations that were not or could not have been adjudicated by the [Review] Board cannot be justified." *Id.* Accordingly, the Arbitrator concluded that "Grievant's termination was not supported by just cause." *Id.* The Arbitrator sustained Grievant's grievance, rescinded his termination, ordered that he shall receive a five-day suspension, and ordered that as a condition of his reinstatement, Grievant must undergo "rigorous retraining" to curb "his rogue, lone wolf tendencies." *Id.* at 20. The Arbitrator further conditioned Grievant's reinstatement on a "last chance agreement," warning that "any repetition of the conduct and violations seen in this case shall result in his immediate termination without recourse to the grievance procedure or arbitration." *Id.*

On December 3, 2021, the Borough filed a petition to vacate the Arbitration Award with the trial court, arguing that the Arbitrator went outside of the CBA in concluding that, under the Regulation, the Police Chief may modify the level of discipline recommended by the Review Board but not deviate in any respect with the Review Board's conclusions. The Borough further argued that the Arbitration Award violates public policy that a police department is not obligated to employ a police officer who engages in gross misuse of police authority, and that the Arbitration Award impairs the Borough's ability to carry out its government function of providing safe and reliable police services to the community. (R.R. at 14a-15a.)

On May 26, 2022, the trial court issued an order affirming the Arbitration Award. Utilizing the narrow certiorari scope of review, the trial court rejected the

8

Borough's argument that the Arbitrator acted outside of her jurisdiction. The trial court held that the Arbitrator acted within her jurisdiction when she applied and interpretated the Regulation that was incorporated into the CBA and concluded that the Borough did not have just cause to terminate Grievant because it violated its own Regulation in deciding to terminate him. The trial court rejected the Borough's contention that the Arbitrator ordered the Borough to commit an unlawful act by reinstating Grievant. Finally, the trial court opined that, although the mandatory reinstatement of a police officer found to be a danger to public safety and a threat to the citizens of Pennsylvania is "certainly repugnant to public policy," it nevertheless noted that it was "constrained to follow the Pennsylvania Supreme Court's determination that such a result is in fact the intention of the legislature." (Trial Ct. Op., May 26, 2022, at 4-6.)

## **ISSUES**

On appeal, the Borough raises the following four issues:

1. Whether the Arbitrator exceeded her powers and jurisdiction by failing to confine her opinion to the issue submitted to her for decision.

2. Whether the Arbitrator exceeded her powers and jurisdiction by infringing on the Borough's managerial prerogative to direct its workforce.

3. Whether the Arbitrator exceeded her powers by ordering the Borough to carry out an unlawful act.

4. Whether the Arbitration Award should be vacated because reinstatement of the police officer to employment with the Borough is repugnant to well-defined, dominant public policy.

(Borough's Br. at 5-6.)

9

## DISCUSSION

The CBA between the Borough and the Association was covered by the Policemen and Firemen Collective Bargaining Act, commonly referred to as Act 111 (Act 111).[5] This Court recently stated and summarized the narrow certiorari scope of review as follows:

> In Act 111 cases, our scope of review is limited to "narrow certiorari," which allows inquiry only into: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; or (4) the deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 656 A.2d 83, 90 (Pa. 1995). If an arbitration award cannot be vacated on one of these bases, then it must be upheld. *Id.* A mere error of law is insufficient to support a court's decision to reverse an Act 111 arbitrator's award. *Appeal of Upper Providence Police Delaware County Lodge #27 Fraternal Order of Police*, 526 A.2d 31[5], 322 (Pa. 1987).

*Uwchlan Township, Pennsylvania v. Uwchlan Township Police Association (Uwchlan Township)* (Pa. Cmwlth., No. 259 C.D. 2020, filed October 9, 2020), slip op. at 4.[6]

Further, as long as an arbitrator's award concerns terms and conditions of employment and does not require performance of an illegal act, or one that a party could not do voluntarily, the "authority" prong of narrow certiorari is "generally met." *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 224 A.3d 702, 712 (Pa. 2020). An argument that an arbitrator misinterpreted a CBA is not within the confines of the narrow certiorari review. *Id.* at 713. This Court's scope of review is a

---

[5] Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.12.

[6] *See* Pa.R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [ ] Non-precedential decisions . . . may be cited for their persuasive value.").

10

"plenary, non-deferential standard where the resolution of the issues turns on a question of law or application of law to undisputed facts." *City of Philadelphia v. Fraternal Order of Police Lodge No. 5*, 932 A.2d 274, 279 n.6 (Pa. Cmwlth. 2007).

**1.**

In its first issue, the Borough argues that the Arbitrator acted outside her jurisdiction by failing to confine her opinion to the issue submitted to her for decision, which was whether the Borough discharged Grievant for "just cause" under the parties' CBA. (R.R. at 166a.) The Borough contends that the Arbitrator found that Grievant's conduct warranted discharge but then went outside of the CBA to reinstate his employment under her interpretation of the Department's Regulation. Specifically, she concluded that under the Regulation, the Police Chief may modify the level of discipline recommended by the Review Board but may not deviate in any other respect from the Review Board. The Borough submits this was error because in suspension or termination cases, the Review Board is not the final decision-maker and there is nothing in the Regulation requiring the Police Chief to exactly mirror the conclusions and considerations of the Review Board. (R.R. at 1152a.) It contends that the Arbitrator acted outside her jurisdiction by attempting to bestow such final decision-making authority on the Review Board, and thus limiting the authority of the Police Chief and Borough Manager under the Regulation, through her interpretation thereof. The Borough argues that by basing her decision on the Regulation, rather than on "just cause" under the CBA, the Arbitrator exceeded her jurisdiction.

An arbitrator exceeds her jurisdiction when she addresses issues not properly submitted to her. *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 181 A.3d 485 (Pa. Cmwlth. 2018). An arbitrator thus may not modify the terms of an existing collective bargaining agreement. *See Marple Township v. Delaware*

11

*County F.O.P. Lodge 27*, 660 A.2d 211, 215 (Pa. Cmwlth. 1995) ("Arbitrators are required to address the issues submitted within the context of the positions of the parties and effectuate the relief requested, not to reform the collective bargaining agreements."). However, an arbitrator has wide latitude to address any issues that are properly submitted to her, and "may speak to an issue if it is reasonably subsumed within the issues properly before the arbitration panel." *Michael G. Lutz Lodge No. 5, of Fraternal Order of Police v. City of Philadelphia*, 129 A.3d 1221, 1231 (Pa. 2015).

Here, the issue before the Arbitrator, as stipulated to by the parties, was whether Grievant was terminated for just cause. While the Borough is correct that an arbitrator does not have the power to rewrite the CBA by creating a new procedural policy, an arbitrator necessarily must have the ability to interpret the CBA in order to determine the rights and powers of the parties involved. Here, the CBA grants jurisdiction to an arbitrator to determine whether the discharge of a police officer is justified under the just cause standard. Article XXX of the CBA states:

> The [Borough] shall not suspend, demote, or discharge without just cause. If an employee alleges that the disciplinary action was without just cause, he may elect to appeal . . . through the grievance procedure commencing with the third step and including arbitration.

(R.R. at 1368a.)

Further, in the CBA, the Borough specifically agreed that it would comply with its own Regulation in the administration of all matters covered by the CBA. Article IV, Section B of the CBA provides, in this regard: "In the administration of all matters covered by this agreement, the parties are all governed by provisions of existing . . . [R]egulations." *Id.* at 1346a. In effect, the CBA authorizes the Arbitrator to determine whether the Borough complied with its Regulation. To that end, the Arbitrator interpreted the pertinent Regulation and found that the addition of extra

12

charges that were not part of the Review Board's deliberation ran counter to the Regulation. (Arbitration Award, at 20.) Thus, she concluded, in response to the stipulated question posed to her, that "Grievant's termination was not supported by just cause." *Id.* The determination that the Borough did not comply with its own Regulation amounted to her interpretation of the CBA because the CBA incorporated that Regulation into CBA. *Pennsylvania Department of General Services v. Fraternal Order of Police #85, Capitol Police*, 684 A.2d 219 (Pa. Cmwlth. 1996). As such, it was the Arbitrator's interpretation to make. *Id. See also Uwchlan Township* (propriety of an arbitrator's interpretation of disciplinary regulations incorporated into contract was beyond narrow certiorari scope of review).

Whether just cause exists is a matter of contractual interpretation. Because the issue of whether the additional charges the Police Chief cited as reasons for discharge were properly before the Review Board is related to the issue of just cause, the Arbitrator was permitted to consider and interpret what actions the Police Chief was entitled to undertake under the Regulation and CBA. Therefore, we must find that the Arbitrator did not act beyond her jurisdiction.

**2.**

In its second issue, the Borough contends that by directing the level of "retraining" needed for a "rogue" officer to return to work, the Arbitrator exceeded her powers and jurisdiction by infringing on the Borough's managerial prerogative to direct its workforce. It asserts that Article III (Management Responsibilities) of the parties' CBA vests the Borough with the managerial right to establish and maintain "standards of quality and performance." (R.R. at 1345a.) It argues that the Arbitration Award infringes on the Borough's managerial rights by imposing a vague "retraining"

13

standard, fraught with risk, as a condition for Grievant performing his statutorily-defined job duties.

We find the issue to be without merit. First, the cases cited by the Borough all involve interest arbitration, not Act 111 grievance arbitration. Second, the Borough also does not point to any established managerial prerogative that conflicted with the Arbitrator's reinstatement of Grievant on the condition that he undergo further rigorous training. It would seem that the Arbitrator's Award requiring "rigorous" training was consistent with the Borough's interests and in any event, it completely left to the Borough to decide what the rigorous training would entail. Thus, we find that there was no infringement upon the Borough's managerial prerogative that rendered the Arbitrator's Award beyond her jurisdiction.

### 3.

In its third issue, the Borough argues that the Arbitrator exceeded her powers by ordering the Borough to carry out an unlawful act, namely, employing a police officer that cannot unconditionally carry out his statutorily-defined job duties. (Borough's Br. at 46-47.)

An arbitrator under Act 111 exceeds her authority (1) by ordering either of the parties to the dispute to commit an illegal act, or (2) by ruling on a matter which is not a mandatory subject of bargaining under Act 111. *City of Pittsburgh v. Fraternal Order of Police*, *Fort Pitt Lodge No. 1*, 938 A.2d 225 (Pa. 2007). Conversely, an arbitrator does not exceed her authority by ordering either party to commit an act which it could legally and voluntarily perform, or by ruling on a matter that is a mandatory subject of bargaining under Act 111. *Appeal of Upper Providence*. Errors of law are unreviewable by a court if the determinations themselves do not exceed the authority

14

of the arbitrator. *Pennsylvania State Police v. Pennsylvania State Troopers Association (Smith & Johnson)*, 741 A.2d 1248, 1252 (Pa. 1999) (*Smith & Johnson*).

The discharge and reinstatement of police officers are mandatory subjects of bargaining under Act 111. Moreover, Grievant was reinstated subject to a written reprimand, a five-day suspension without pay, further training, and a last chance agreement. The reinstatement of Grievant with these conditions is something the Borough could have done voluntarily. There is no law that would prohibit the Borough from reinstating Grievant on the condition that he undergo rigorous training and with a last chance agreement if the Borough wished to do so. The Arbitration Award does not, in any way, require the Borough to do something that it could not have legally done on its own. Therefore, we are constrained to find that the Arbitration Award did not exceed the Arbitrator's authority.

**4.**

In its final issue, the Borough asserts that the Arbitration Award should be vacated because reinstatement of Grievant to employment with the Borough is repugnant to well-defined, dominant public policy.

The Pennsylvania Supreme Court rejected that contention in *Smith & Johnson*, explaining as follows:

> Broadening the narrow certiorari scope of review to include a provision which would allow the courts to interfere with an arbitrator's award whenever that award could be deemed to be violative of "public policy" - however that nebulous concept may be defined by a particular appellate court - would greatly expand the scope of review in these matters. If we were to adopt [the appellant's] recommendation to include this ill-defined term within the narrow certiorari scope of review, we would markedly increase the judiciary's role in Act 111 arbitration awards. This would undercut the

15

> legislature's intent of preventing protracted litigation in this arena.

741 A.2d at 1252-53. We are bound by this Supreme Court precedent. Accordingly, the standard of review for Act 111 cases does not encompass, and this Court cannot expand it to include, a public policy exception under the excess powers prong of narrow certiorari. *See also Borough of Gettysburg v. International Brotherhood of Teamsters, Local 776*, 233 A.3d 1002 (Pa. Cmwlth. 2020) (on judicial review of an arbitration award arising under Act 111, there is no public policy exception under the excess powers prong of narrow certiorari).

  For all the above reasons, the trial court's order is affirmed.


      _____
      PATRICIA A. McCULLOUGH, Judge


President Judge Cohn Jubelirer did not participate in this decision.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of State College,  :
                Appellant :
                          :
        v.                : No. 696 C.D. 2022
                          :
Borough of State College  :
Police Association        :

# *<u>ORDER</u>*

AND NOW, this 6th day of October, 2023, the May 26, 2022 order of the Court of Common Pleas of Centre County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge